UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CARRIE HIGGINS,

           Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.

**REPORT AND RECOMMENDATION**

09-CV-1148
(LEK/VEB)

## I. INTRODUCTION

In December of 2006, Plaintiff Carrie Higgins applied for Supplemental Security Income ("SSI" )benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since November of 2006, due to various physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications. Plaintiff, through her attorney, Peter A. Gorton, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On September 3, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 13).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for benefits on December 13, 2006, alleging disability beginning on June 17, 2005. (T at 87-91).[1] The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Binghamton, New York, on April 15, 2009, before ALJ Michael W. Devlin. (T at 23). Plaintiff appeared with an attorney and testified. (T at 27-45). At the hearing, Plaintiff amended her alleged onset date to November 3, 2006, on the advice of counsel. (T at 11).

On June 15, 2009, the ALJ issued a decision denying Plaintiff's applications for benefits. (T at 11-22). Plaintiff filed a timely request for review by the Appeals Council. The ALJ's decision became the Commissioner's final decision on September 25, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, through counsel, commenced this action on October 14, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). The Commissioner interposed an Answer on January 22, 2010. (Docket No. 7). Plaintiff filed a supporting Brief on April 23, 2010. (Docket No. 10). The Commissioner filed a Brief in opposition on April 29, 2010. (Docket No. 11).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

motion be denied, Plaintiff's motion be granted, and that this case be remanded for further proceedings.

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

   **1.   Commissioner's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2010. (T at 13). The ALJ noted that Plaintiff had not engaged in substantial gainful activity since the amended onset date. He further determined that Plaintiff had the following medically determinable impairment considered "severe" under the Act: chronic right wrist pain secondary to injury. (T at 14).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 17).

The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567 (b) and 416.967 (b), except that

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Plaintiff can occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, stand/walk at least 2 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and occasionally handle and finger objects, and feel with her right hand. (T at 17-18).

The ALJ determined that Plaintiff did not have the RFC to perform her past relevant work as a retail salesperson. (T at 20). However, the ALJ found that considering Plaintiff's age (33 years old), education (high school), and RFC (outlined above), there were jobs that existed in significant numbers in the national economy that Plaintiff can perform. (T at 21).

Accordingly, the ALJ determined that Plaintiff was not under a disability, as that term is defined under the Social Security Act, from the alleged onset date through the date of decision. (T at 21). As noted above, the ALJ's decision became the Commissioner's final decision on September 25, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

### 2. Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers four (4) principal arguments. First, Plaintiff contends that the ALJ did not properly evaluate her credibility. Second, Plaintiff argues that the ALJ did not correctly weigh the assessment of her treating physicians. Third, she asserts that the ALJ did not give proper weight to other medical evidence of record. Fourth, Plaintiff asserts that the ALJ erred by failing to consult a vocational expert. This Court will address each argument in turn.

#### a. Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze,

333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's

7

credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that right wrist pain prevents her from lifting "much of anything" and limits her to grasping and holding "feebly." (T at 34). The pain is constant and makes sleeping difficult. (T at 35). Plaintiff lives alone and her daily activities involve cooking, some cleaning (but not vacuuming), and watching television. (T at 35-36). The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely supported by the record. (T at 20).

This Court finds the ALJ's credibility assessment flawed in the following respects: First, according to SSR 96-7p, "a longitudinal medical record demonstrating an individual's

8

attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements." SSR 96-7p.

Plaintiff has an extensive history of pain treatment involving multiple methods performed over several years, including physical therapy (T at 206-42), corticosteroid injection (T at 365), wrist arthroscopy (T at 362-63), prescription pain medication (T at 345), and acupuncture. (T at 312, 324-25). Plaintiff has sought opinions and/or treatment from numerous providers and specialists, including Dr. Jon Loftus, an orthopedic surgeon (T at 303-304), Dr. Jeffrey A. Jones, with the University of Rochester's Department of Orthopedics (T at 313), and Dr. James Dellavalle of the Johnson City Family Care Center's acupuncture clinic. (T at 325).

Given Plaintiff's history of treatment, her credibility should have been given extra weight. At the very least, the ALJ was obliged to make it clear that it carefully considered the impact of the treatment history on Plaintiff's credibility before discounting her testimony. See Dailey v. Barnhart, 277 F.Supp.2d 226, 239 (W.D.N.Y.2003) (noting that SSR 96-7p should likely have enhanced Plaintiff's credibility because Plaintiff "has seen a variety of physicians and specialists, has followed her prescribed treatments, has taken her medications ..., and has even discussed other 'experimental treatments' with [her treating physician]"). It is not clear from the ALJ's decision that he properly afforded Plaintiff enhanced credibility on this basis.

Second, Plaintiff's testimony concerning the extent of her wrist pain was fully supported by the assessments of her treating orthopedists, both of whom opined that the

9

pain was fully disabling. The ALJ afforded little weight to one of Plaintiff's treating sources and did not discuss the other. Thus, the ALJ's decision to discount Plaintiff's credibility is itself based upon his decision to afford limited weight to the assessment of her treating doctors.

For the reasons outlined below, the ALJ's consideration of the treating source opinions was flawed. In sum, the medical records cited by the ALJ in support of his decision to discount the assessments of Plaintiff's treating orthopedists did not adequately address the disabling impairment (*i.e.* severe wrist pain) and, thus, did not actually contradict the assessments of the treating sources. Accordingly, the ALJ erred by relying upon those records in support of his finding that Plaintiff's testimony concerning disabling wrist pain was not fully credible.

Lastly, it appears that the ALJ found the lack of an objective explanation for Plaintiff's wrist pain controlling with regard to the question of disability. However, it is well-settled that "[w]hen the evidence demonstrates a medically determinable impairment, 'subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence.'" Stytzer v. Astrue, 07-CV-811, 2010 WL 3907771, at *8 (N.D.N.Y. Sept. 30, 2010)(quoting Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979)); see also Flanders v. Shalala, 91-CV-337, 1994 WL 329482, at *4 (N.D.N.Y. July 1, 1994)("If in fact the ALJ did not consider the credibility of plaintiff's claims of disabling pain but instead rejected her claims on the ground that objective, clinical findings did not establish a cause for such intense pain, then the Secretary's decision was premised on an erroneous legal standard.").

In light of the foregoing, this Court finds that the ALJ's credibility assessment was

flawed and this issue should be revisited on remand. In particular, additional weight should be given to Plaintiff's testimony in light of her extensive history of pain treatment and the fact that her claims of disabling pain are supported by the assessments of her treating physicians.

### b.      Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[3]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

---

[3]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

In this case, Dr. David W. Ellison, one of Plaintiff's treating orthopedists (who sub-specializes in hand surgery), opined that Plaintiff's "chronic regional pain syndrome" caused pain sufficiently severe to render Plaintiff "disabled from work . . . on a permanent basis." (T at 314). Dr. Ellison further explained that "[d]espite extensive hand therapy and time for healing, [Plaintiff] has had persistent hand pain which has disabled her from work." (T at 367). Dr. Erik Heister, a treating physician associated with Orthopedic Associates of Binghamton, indicated that Plaintiff had "not returned to work secondary to her continued pain." (T at 343).

The ALJ did not address Dr. Heister's opinion at all and afforded "little weight" to Dr. Ellison's assessment. (T at 20). The ALJ explained that Dr. Ellison's diagnosis was "suspect," characterized his opinion as "retrospective," and indicated that the doctor had "encroached into an area reserved to the Commissioner." (T at 20).

The ALJ did not explain precisely why he found Dr. Ellison's diagnosis "suspect." However, the ALJ's own RFC determination was based upon a July 2006 functional capacity evaluation performed at United Health Services Hospital and a January 2008 letter from Dr. Jeffrey Jones, which the ALJ afforded "significant weight." (T at 20).

The ALJ's decision to credit these records over the assessments of Plaintiff's treating orthopedists was erroneous. The ALJ apparently believed that Dr. Jones contradicted the treating sources. However, Dr. Jones, who examined Plaintiff on a single occasion, did not make any specific finding as to whether Plaintiff's wrist pain was disabling. Rather, he simply stated that Plaintiff should not "perform activities which require heavy or repetitive lifting with the upper extremity, should not do high speed or dexterity activities or activities which are not self-paced." (T at 313). The ALJ read Dr. Jones's

12

assessment as suggesting that Plaintiff could perform light work and cited the assessment as a significant piece of evidence supporting the ALJ's RFC determination. (T at 20). However, not only did Dr. Jones make no such finding, his indication that Plaintiff should not perform "activities which are not self-paced" is certainly not consistent with an ability to perform competitive, remunerative work activities (which are often, obviously, not "self-paced"). Indeed, Dr. Jones's assessment in this regard tends to support the findings of Plaintiff's treating sources.

In July of 2006, Andrew G. Buckley, an evaluator with United Health Service Hospitals in Binghamton, performed a physical work performance evaluation of Plaintiff. (T at 170). It appears that Mr. Buckley is an occupational therapist and certified hand therapist. (T at 174). Mr. Buckely indicated that Plaintiff was capable of performing light work. (T at 170). However, Mr. Buckley's evaluation is problematic in several respects.

The evaluation was completed in July of 2006, several months prior to the alleged onset date. The evaluation indicates that Plaintiff can perform "light work" and defines such work as involving lifting/carrying 20 pounds occasionally and 10 pounds frequently. However, Plaintiff's actual test results indicated that she was able to lift only 13 pounds, carry 8 pounds with two hands, and not carry any weight with her right hand. (T at 173). The evaluation indicates that Plaintiff is capable of sustaining the light level of work for an 8-hour day and supports this conclusion with the conclusory statement that Plaintiff was "[a]ble to complete the evaluation." (T at 174). It is not clear how rigorous the evaluation was or how the ability to complete the evaluation correlates with the ability to endure light work on a consistent basis over an 8-hour work day.

The ALJ ignored or set aside the findings of Plaintiff's long-time treating orthopedic

13

specialists and gave more weight to a one-time evaluation, performed by a non-physician before the alleged onset date. In this regard, it is notable that the ALJ had no difficulty crediting Mr. Buckley's assessment even though it was completed before the alleged onset date, but was quick to dismiss Dr. Ellison's opinion as "retrospective."

In any event, Dr. Ellison rendered two opinions regarding the disabling nature of Plaintiff's right wrist pain – January of 2008 (T at 314) and March of 2009 (T at 367-68), both of which post-dated the alleged onset date. Further, the contemporaneous treatment notes from throughout the relevant period document Plaintiff's complaints of severe wrist pain. (T at 328-366). As such, it was not proper for the ALJ to dismiss Dr. Ellison's assessment as either "suspect" or "retrospective."

In sum, both of the treating orthopedists found that Plaintiff's right wrist pain was of disabling severity. "[T]o overcome the force of a claimant's subjective complaint of pain and [her] treating doctor's opinion as to the existence of disability the counter evidence must be of a substantial nature." Leftenant v. Schweiker, 543 F. Supp. 989, 993 (S.D.N.Y. 1982). Neither of the pieces of evidence cited by the ALJ (*i.e.* the July 2006 evaluation or Dr. Jones's consultative evaluation) were sufficient to undermine the orthopedists' opinions in this regard. On remand, the ALJ should reconsider the treating sources' assessments in light of these considerations.

### c. Consideration of Other Medical Evidence

Plaintiff argues that the ALJ improperly relied upon the July 2006 functional capacity assessment and mischaracterized the findings by Dr. Jones. For the reasons discussed above, this Court finds these arguments well-founded.

The functional capacity assessment pre-dated the alleged onset date and its overall

14

findings with regard to Plaintiff's capacity were not consistent with the internal test results. Further, the key question is whether Plaintiff's right wrist pain is so severe as to render her unable to sustain work activities. The Plaintiff's treating orthopedists opined that the pain was of sufficient severity to be disabling. An evaluation of Plaintiff's ability to lift/carry objects, sit/stand, and perform other like exertional tasks does not address whether her pain is of disabling severity. As discussed above, although the evaluation states that Plaintiff has the endurance to perform light work throughout an 8-hour day, that conclusion is not adequately supported or explained.

Moreover, contrary to the ALJ's findings, Dr. Jones, a one-time consultative examiner, did not contradict the findings of Plaintiff's treating sources concerning the disabling nature of the pain. Indeed, Dr. Jones appeared to support this assessment by opining that Plaintiff should avoid activities that are "not self-paced." (T at 313). Accordingly, this Court finds that the ALJ afforded an improper amount of weight to the functional evaluation and did not correctly characterize Dr. Jones's assessment. Both pieces of evidence should be reconsidered on remand in light of the foregoing concerns.

### d.     Failure to Consult a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P,

Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids (Medical-Vocational Rule 202.21 in particular) as a framework in reaching his decision that Plaintiff was not disabled. (T at 21).  However, this assessment was based upon the ALJ's conclusion that Plaintiff could perform light work, with some limitations.  For the reasons outlined above, the ALJ's assessment in this regard is flawed.  Specifically, he did not give proper consideration either to Plaintiff's subjective complaints or to the findings of her treating sources, placed undue emphasis on a single functional capacity evaluation performed by a non-physician, and mischaracterized the report of Dr. Jones.  Accordingly, the step five analysis will need to be revisited on remand after the foregoing evidence is reconsidered.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for

judgment on the pleadings be granted, the Commissioner's motion be denied, that the decision of the Commissioner be reversed, and that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

_____
Victor E. Bianchini
United States Magistrate Judge

Dated:   November 22 , 2010

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

**of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

November 22 , 2010

Victor E. Bianchini
United States Magistrate Judge